We'll hear argument first this morning in Case 09-11311, Sykes v. United States. Justice Ginsburg is not on the bench, but will participate in the argument through the transcripts and the tapes. Mr. Marsh. Mr. Chief Justice, and may it please the Court, the Armed Career Criminal Act enhances the punishment for possession of a firearm or ammunition for a person who has three previous convictions for a violent felony. This case involves, as you know, vehicular fleeing, which Indiana has divided into five categories. The Indiana statute treats vehicular fleeing as a continuum of behavior ranging from merely failing to stop on the low end, which is the crime Mr. Sykes was convicted of violating, all the way to fleeing, which results in the death of a police officer on the high end, which in Indiana is a Class A felony. What's in between? The second tier up is what we refer to as B-1B, which is fleeing which either causes bodily injury or creates a substantial risk of bodily injury. The next category up is fleeing which causes serious bodily injury. The fourth category is fleeing which causes a death. This Court recognizes the treatment of the defendant. Scalia, we can assume that the conviction here did not involve any risk of bodily injury to anybody. That's our position, Your Honor. When the Court considers the conduct encompassed by the elements of the offense, then that conduct does not involve conduct which creates a risk of bodily injury. Kennedy, I'm sure you'll do so in the course of your argument, but at some point give us some examples of violations of this statute which, from a common sense standpoint, don't involve a serious risk. There was something in the briefs about, oh, well, the defendant might want to just find a safe place to pull over. I didn't follow that because it's an intent crime. I just don't see how that would be a violation. But if at some point in your argument you could address those points. I'd be happy to respond now, Justice Kennedy. The court, the case that you referred to is the Indiana case of Woodward from the Indiana Court of Appeals in which the court held that exactly that conduct did violate this statute because the knowingly or intentionally the mens rea element goes only to fleeing and using a vehicle. So that was one example of merely failing to stop. Kennedy, I'm sorry. Looking, looking, I don't mean to interrupt your answer, but looking for a safe place to stop violates this statute? That was the holding of the Indiana Court of Appeals, yes. So you're supposed to stop dead in your tracks and not pull off on the shoulder? I mean, I don't, I just don't understand this. I'll go read the case, but. Well, the court doesn't. I'm going to drive in Indiana. I think that's pretty tough. The court did not elaborate, Your Honor, on where the line is, but it was. Maybe that's why it's a risk. You stop in the middle of the road and then everybody will. That would be more likely to create a risk. But how can you say somebody's fleeing? I mean, doesn't fleeing mean you're trying to escape the officer? Justice Scalia, the holding of the Indiana Court of Appeals was in response to a position taken by the defendant, sort of along the lines of the two lines of questioning, which is surely the statute requires something more than merely failing to stop. But the Indiana Court of Appeals used precisely that language. I think the problem with your argument is that the prosecution is not under any obligation to charge any offense greater than the offense for which your client was convicted in a case in which there is a very grave risk created by the flight. Isn't that true? The prosecutor is not under any obligation. Was that the question, Justice Alito?  I think that's correct. The prosecutor is not under any obligation. So the fact that someone is convicted of this offense does not show that a broad category of offenses within this crime lack the risk that's necessary under the Armed Career Criminal Act. Well, I suggest that it does, Your Honor, because the James case makes clear that the Court will determine whether the crime creates a serious potential risk of physical injury to another by looking at the conduct encompassed by the elements of the offense. Now, the fact that some other offense maybe could have been charged or was charged, I suggest on the categorical approach, is not relevant. Are you familiar with the case called Hape v. State, Indiana Court of Appeals, 2009? Tate v. Hape. Hape, H-A-P-E. I'm not, Your Honor. During a 45 minute high speed chase, officers shot at the defendant's truck at least 20 times. The State's facts showed that the defendant drove over 100 miles per hour and at times drove into the oncoming traffic lane. Do you think that creates a serious potential risk of harm? Well, those, of course, aren't the facts here, and I would have to know what the individual was convicted of, because, of course, under the categorical approach. I believe he's convicted of the same offense as Mr. Sykes. But, of course, under the categorical approach established by Taylor and followed consistently by this Court since that time, the Court doesn't look at the facts of the individual case. The Court looks at it categorically. So if the Court looks at it categorically, I've always thought, means you look to see not just what the elements are on paper, but whether the elements as used in reality in the State are applied to cases that do present, in general, applied to cases that do present a serious risk of physical injury. And you think the answer is, we don't know, because no one's gone and looked. You could do it through sampling, but no one's gone and looked. I've just said that's my view of it. The — so what do we do? I mean, I can deal with a lot of other States, but Arizona has exactly the same classification of felony when you use a vehicle. And when you use a vehicle creating a serious risk of physical harm to others. It's in the same provision, same statute, same category. How do we work with that, in your opinion? If the other States, they grade it, but here they don't. Right. Well, Indiana, of course, does grade it, Your Honor. Indiana, I'm sorry. And it is significant that the second most serious category is where the conduct does present a substantial risk of bodily injury. And I don't know how we could proceed by looking at, you know, whether, in fact, a majority of the cases that come into this first relatively harmless category did indeed involve situations that involved physical risk, because, as everybody knows, prosecutors plea bargain. And it's probably very often the case that the defendant is charged only under category 1, where, you know, if he went to trial, they'd charge him under 3. Isn't that so? But, of course, Your Honor, under the category 1, yes, yes, you want to say yes. Thank you. Yes. Well, I still — look, what I'm thinking of, and I need a little explanation. We look to C in B, and it says it's a Class D felony if a vehicle is used. That's A under 1. Am I right? Yes. Okay. Then we look to B under 1, and it's also a Class D felony, in other words, the same, if a vehicle is operated in a manner that creates a substantial risk of bodily injury. Yes. So a prosecutor looking at that will say, why don't I just charge A? What's the point of charging B? I mean, it makes no difference, apparently. So it's simpler to prove A. Justice Breyer, in 2003, when Mr. Sykes was convicted of this offense, what you said is exactly right. Of course, we have no way of knowing the motivation of prosecutors generally, let alone in this case, and it wouldn't really matter what it was in this case, what I think it's significant that in 2006, the Indiana General Assembly amended that statute, so now the B violation carries with it a mandatory jail sentence, 60 days. Well, I can deal with it more easily then, at least I have in the Bet. But what's worrying me now is what we're supposed to do is, is the offense an offense that presents a serious risk of physical injury to another? Yes. So we're here trying to decide whether the A one does. Yes. And the answer is, I don't know. And the reason I don't know is I don't know how that offense language of A is applied in Indiana. Sotomayor, do you know if Indiana has an enhancement for conviction, sentencing enhancement of any kind for convictions that have an element of risk of harm to others? Your Honor, there are a number of habitual sentencing enhancements, one of which specifically relates to driving. I can't say that it is based on substantial. So it's possible that there is a use of the difference between the two categories that might not be implicated in this case, but may lay the foundation for an enhancement later? Yes. That's a good point, Justice Sotomayor. The enhancements generally in Indiana relate to previous convictions. And so I can't say for sure, but it's entirely possible that B, B1B, would be a predicate crime for a habitual traffic offender, which is what it's based on. In your brief, you take issue with the government's definition of aggressive. Would you give us yours? How would you define it and on what basis? Your Honor, the best definition of aggressive that I've seen was in the First Circuit opinion in the Herrick case, which is cited in our brief, which the First Circuit refers to as forceful action, especially where intended to dominate or master. But on general, everyday language, it strikes me that when a law enforcement officer wants somebody to stop, whether they're in a vehicle or not, the fighter or the person trying to flee sort of comes into play. And the person who responds by going toward the police officer and resisting in that way, which is the first part of this Indiana statute, would be acting in an aggressive way. The person who flees is not acting in an aggressive way. They're trying to avoid the confrontation. They're trying to get away from the law enforcement. Kagan. Mr. Marsh, I take it that you would agree that B-1B is a violent felony under ACCA. Is that right? Your Honor, it may very well be. It certainly would satisfy the risk element, similar in risk to the Begay case. I think it would still have to be decided whether it's violent and aggressive, but it may very well be. If we think that B-1B is a violent felony under ACCA, and we know that B-1A and B-1B can receive the same punishment, that they're both classed as a Class D felony, why should we make the distinction between the two under ACCA? Your Honor, I would suggest because the Indiana General Assembly has decided in enacting this legislation that some vehicular fleeing presents a substantial risk of bodily injury to another and some doesn't, and they've drawn this distinction. I presume that if the State thinks of them as equally severe, and if one is a violent felony under ACCA, there's an argument that the other should be treated equally severely. And if the State thinks that the other is a violent felony under ACCA, then the other should be treated in the exact same way. Your Honor, I would suggest that the State doesn't treat them as equally severe. The range of punishment for a Class D felony, which both of those crimes are, is all the way from zero to 3 years in prison, and the actual conduct undoubtedly is a factor in what the person's ultimate sentence will be. And it may well be that in deciding whether to accept a plea bargain of being guilty of A rather than going to trial on B, if your client has two violent felonies already on the book, you might take the plea bargain under A, lest you run afoul of the Violent Felony Act. Yes, Your Honor, that's, of course, entirely possible. But again, just as with the categorical approach, the Court cannot take into account the motives of prosecutors, I would suggest the motives of defendants and defense lawyers can't be taken into account, either. Further, I think it's more important that when Indiana enacted this statute, it was not thinking of ACCA and predicate crimes, I assume. I don't think the legislature takes those kind of things into account. Alito, I suppose the legislature were to repeal B-1-B, would the offense for which Mr. Sykes was convicted then become an ACCA offense? Your Honor, that would be a question that would have to be decided on the basis of whether there's some basis to, well, first of all, determine whether it's violent and aggressive. In my position, it would remain it's still not violent and aggressive. But even on the second part of the Begay approach, this Court has not seen anything that gives you any basis for knowing what the risk of injury is. I don't understand your answer to that question. I would have thought that your answer, if you're insisting on a categorical approach, would be no, that there's nothing in 3 that requires any violence at all, just fleeing by visible or audible means, just flees, that's all it says. I'm sorry, I understood the question to be that A is repealed and B is left in place. Alito, it's the opposite. If the aggravated offense, you rely on the aggravated offense in large part as the basis for your argument. Your argument, one of your main arguments, as I understand it, is that what I'll the simple offense doesn't qualify under ACCA, because cases involving a serious risk of bodily injury fall under the aggravated category. And my question is whether a repeal of the aggravated offense would then convert the simple offense from a non-ACCA offense to an ACCA offense. Or you could ask it a different way. If State 1 has the simple offense and the aggravated offense, State 2 has just the non-ACCA offense, is the simple offense an ACCA offense in one State and not in the other State, even though the elements are exactly the same? That's a good question. Your Honor, the equation would be different because of the significance of the B offense, so that's not exactly our case. But I will adopt Justice Scalia's answer, which I think is exactly right. It still would not be something that's violent. But you're answering my question by making a totally different argument. Insofar as you're relying on the aggravated offense, the presence of the aggravated offense, I would appreciate an answer to it. In other words, you're saying, maybe I haven't made myself clear, Justice Scalia's answer, which you've adopted, is that if you look at A by itself, forget about the aggravated offense completely, it doesn't qualify under ACCA. And that's one argument. But your other argument is that A, the simple offense, doesn't qualify because of the presence of B, and I'm trying to see whether that makes sense. Yes, sir. Justice Alito, I think it breaks down to the two parts of the Begay test. In order to be a violent felony, it has to be similar in kind and similar in degree of risk. The existence of B makes clear that the degree of risk for violating A is not the same, because if you accept the continuum of behavior as created by the Indiana General Assembly, the person who's convicted of A has not created a substantial risk of bodily injury. Sotomayor, have you done or looked at, not every burglary has a risk of harm to another or results in harm to another. The general definition of burglary is entering without permission and intent to commit a crime, and generically, the crime doesn't have to be physical injury to others. Yet, ACCA defines burglary as a qualifying crime of violence. It's measuring risk not by the elements of that crime, but by something else. By some measure of incidence in which violence might occur. So how is that different than the government's argument here and the question that Justice Breyer asked you, which was, it is true, potentially there's some forms of fleeing that might not pose a risk of injury, but statistically, there's a large number of incidents in which violence follows. So how is that different than burglary? That's really my question. What the can't be that the elements have to pose a risk of injury because burglary doesn't do that. So what do we measure? Your Honor, the inquiry, as the Court said in James, is whether the conduct encompassed by the elements of the offense presents the risk, and that's the determination that the Court has to consider. It is not necessary, and I'm not contending, that this crime is a violent felony only if every conceivable violation of the statute constitutes a risk of danger. That is not the case. Sotomayor, that's my question. Where do we draw the line?  Where do we draw the line? You draw the line. Sotomayor, I think that was what Justice Breyer was trying to ask you earlier, which is when do we say that, as in burglary, that some risk is more likely to follow than not in a particular type of crime? Well, the line is defined by the statute, a serious potential risk of physical injury to another. Now, how do you make that determination? Well, the Court made clear in Chambers that empirical data is one way to do it. There isn't any here, because of all the empirical data presented by the government. It relates to vehicular fleeing as if there was one crime of vehicular fleeing, and most of it is calculated based on death or injury, and that, of course, is not the category that we have here. Scalia, I suppose that if we agreed with you that whether it is a violent crime depends upon what other prosecutions for fleeing could have been brought. If we agree with you that 1A is negligible because there are other bigger ones for which he wasn't charged, we could leave open the question of what happens in a State that has only one crime for fleeing. Then we would have to confront the question that Justice Sotomayor has asked. But if we accept your notion that where you have a gradation that is adopted by the State, the lowest gradation cannot be determined to have a high percentage of bodily risk, right? Yes, that's correct, Justice Scalia. Breyer, my problem is there is arguably not here a gradation. Suppose it only had A. If it only had A, for me, I'm not saying for you, this wouldn't be a tough case. That is to say, I can't imagine a person running away from a police in a car where there isn't a real risk to other people. He's speeding, you know. I would think, I don't see how you get away from the policeman unless you speed. And they are going to be pedestrian, who knows, but I think that was pretty, at least as bad, at least as much of a risk as burglary. So that would be the end of the case. It would be simple. At least assume that. Now, then, however, suppose we have a State which says, but it's the worst thing to run away and create a risk in a separate provision. It's a worse thing. All right. Then I would say, huh, now I'm not so sure. Why didn't they charge the worst thing? This must be reserved for cases where it isn't. So here we have a rather weird situation. They are saying it's a different thing, but not a worse thing. So now I say, why didn't they charge? Huh, now I don't know. I don't know why they didn't charge the special one. I don't know what the facts are. I'm puzzled. Now, that's your case. That's where I needed the enlightenment. So what's the enlightenment? Your Honor, it's not a weird situation, because the Indiana definition of the crime of vehicular fleeing is not one all-encompassing crime. It's they took the all-encompassing generic vehicular fleeing and divided it into five subparts, which I suggest makes it much easier to resolve the B1A question. If there is no other categories, that would be Justice Scalia's point, I think. And then it would be a much harder question, and it may very well be that it would be considered a violent felony for one thing. Alito, isn't it still an empirical question? If we were to look at all the cases that are prosecuted under what I'll call the simple offense, we might discover that those are all cases in which there is no serious potential risk of physical injury created, because all of the risky cases are prosecuted under the aggravated label. We might also find that there are still a great many cases that involve a serious potential risk that are prosecuted under the simple category. So the fact that there's a gradation doesn't allow us to escape the empirical issue, does it? No, I think you're exactly right, Justice Alito. That would be possible. Empirical data could show what you have just suggested. Of course, that would be indicating that the Indiana General Assembly didn't have any rational basis for dividing the two, but the important thing here is they didn't have a rational basis for dividing it. It would just show a pattern of prosecution and plea bargaining. That's what it would show. But the important thing here, Your Honor, is there simply is no such data before this Court. There is no empirical data regarding B1A. But there never is really reliable empirical data, almost never, for any of the issues that have to be decided under the catchall, the residual clause of ACCA. It has to be based on basically common sense and experience, doesn't it? Your Honor, I suggest that common sense and experience is not a reliable, predictable way of deciding these cases. You're right. There frequently is not empirical data. If there's not either empirical data that demonstrates the danger involved or a crime that where the danger is pretty obvious, so that there would be widespread general agreement, common sense is what has led to a lot of the conflicts in the circuits,  I reserve my time, Your Honor. Thank you, Mr. Marsh. Mr. Wall. Mr. Chief Justice, and may it please the Court, just a very quick moment of history I think provides some useful background. And I'm on page 3A of the appendix to the government's brief. Until 1998, subsection B, which we've been talking about, was the only Class D felony that involved vehicular flight in Indiana law. In 1998, the Indiana General Assembly broke out and enacted subsection A so that in cases of vehicular flight, prosecutors would not have to prove risk. They would just have to prove that the defendant used the vehicle. Since 1998, I've found 14 cases in the Indiana court of appeals, one of which is the Hape case that Justice Alito cited earlier. All of them, so far as I can tell, proceeded under A and not under B. Of those 14 cases, 13 have enough facts to tell what the flight was of what kind. Ten involved speeding, disregarding traffic laws or striking an officer with the vehicle. Of the other three, only one involved non-risky behavior, and even that was not a defendant who drove a short distance and then pulled over. It was a defendant who was not. Scalia. These were all litigated cases? Yes, Justice Scalia. These were all litigated to conviction and taken up on appeal, and the Indiana court of appeals addressed various legal issues. 14 isn't very many, and I assume the vast majority of these cases aren't litigated. I think that's right, Mr. Chief Justice. The government's point is that here we have extensive data, both empirical and otherwise, that indicates that flight as a basic offense is very dangerous. And the point is that Indiana is not. I read your brief and was surprised that when you're at the list, one of the things you talk about to show that is media reports. You usually have more concrete basis for speculation than media reports. Mr. Chief Justice, if that is all we had put forward, I might agree with you, but we also put forward extensive statistical data. My point is just that Indiana is typical. It's dangerous everywhere else. It's four times as dangerous as arson. It's more dangerous than household burglary. There's nothing different about Indiana. If one looks through the cases, these flights in Indiana are typically quite dangerous. Suppose you have a State that has a separate crime for trespassing, criminal trespass, and you're saying that if you could show that a large number of cases that were brought under criminal trespass, in fact, could have been prosecuted under burglary, then criminal trespass would qualify as a violent felony. That doesn't seem to me right. Just because prosecutors make that choice, that doesn't establish that there's a violent felony, it doesn't establish that the elements of the crime, which is what we focus on in deciding whether it's a violent felony, fill the bill. That's right. This Court looks at the conduct encompassed by the elements in a typical case, and in a typical case of vehicular flight, what we have, according to the data, is someone fleeing police at an average of 25 miles an hour over the speed limit, someone who is in a typical case young, male, unlicensed, under the influence of alcohol, and who places the lives of other motorists, pedestrians, and police in harm's way. Your approach to Act of Justice Scalia has been to look at the conduct encompassed by the elements and to ask whether the risk from that conduct is at least as great as the least risky enumerated offense. And here you are. Sotomayor, that ignores the in-kind requirement of Begay, because you seem to be confusing the risk of violence with the in-kind inquiry. And that's where I'm trying to concentrate a little bit on, which is in Burgery the defendant is breaking into, generally, a place and going without permission with an intent to commit a crime. How is that comparable to merely not stopping when a police officer tells you not to stop? How is that an in-kind? Garrett, it's absolutely true there are two parts to the test, and we've been talking about the first risk. On the second prong, the purposeful, violent, or aggressive character of the conduct. Here, I think there are three distinct things that make it purposeful, violent, and aggressive. First, you have the defiance of the officer's order, which can cause injury at the scene. It has in some Indiana cases, but at least calls the officer to give chase. Second, you have the very real prospect of action. Sotomayor, all you're doing is saying I'm not stopping. You're not even saying I'm not stopping. You're just driving away. Well, yes, but you're driving away in response to an officer's command to stop. You're calling the officer to give chase. Your pursuit is likely, and even when there isn't pursuit, these offenders drive typically very recklessly, and then you've got the confrontation when the officer has to terminate the flight. That is all the risk question, and you're confusing the police actions with the defendants, because you're talking about the defendant responding to a police pursuit. So what is in the act of the crime that makes it in kind to burglary? So let me analogize it then to the others. I would concentrate on burglary because the others don't. No, let me concentrate on burglary then and analogize it to what this Court said in James. It said the risk of attempted burglary. James predated Begay, so that's accurate. That's right. But the Court has talked about, even in Chambers, about the risk of a violent confrontation with law enforcement officials, and it's done that under the Begay part of the test. And whereas that confrontation is only possible with burglary, it's necessary with this crime. It requires that an officer order you to stop and that you flee. So that confrontation, which is only a possibility with burglary or attempted burglary, is elevated to a certainty with this offense. Kagan, what does that suggest, that if I just ran from a police officer, it would be a violent felony under ACCA? I think it would suggest that, Justice Kagan, but I think flight on foot is unlikely to satisfy the risk part of the test. I think certainly this case is much easier on the James part of this test. I think the flight in a vehicle poses risks, very real risks, to other motorists and pedestrians and police that flight on foot doesn't pose, although you'd still have the confrontation when the flight on foot was terminated. So I think some of the arguments would translate. You're right. I think there would be more difficult questions, though, on the risk prong. This is a much easier case. Scalia, do words mean nothing? I mean, we're talking about a violent felony. That's what the Federal law requires. And you want us to hold that failing to stop when a police officer tells you to stop is a violent felony. That seems to me a big leap. I mean, words have some meaning. And Congress focused on violent felonies. Justice Scalia, words do have meaning, but the words here are very broad. Serious potential risk of physical injury to others. And as you yourself have recognized in multiple opinions, what those words call for is a comparison of risk between an offense and act as enumerated crimes. This offense, simply put, is more risky. It's four times as risky as arson in terms of injuries and fatalities. It's more risky than household burglary. Roberts, another word is aggressive in Begay, and that's where I have a little difficulty with your argument. It seems to me this is the exact opposite of aggressive. He's running away. Certainly, the other option is to turn and confront, and he doesn't want to. There's nothing aggressive about running away. Well, there is, Mr. Chief Justice, when you're doing it in a vehicle and typically at high speeds. So in chambers ---- That's the risk of violence, I understand that, and purposeful, which I guess everything is. But those are the three words, purposeful, violent, and aggressive. I'll give you purposeful, I'll give you violent, but aggressive? Mr. Chief Justice, if you give me those two, I think we're home free, because this Court said in chambers ---- I think you're two-thirds of the way home free. I'll take it and let's work on the last third. So the ---- what this Court said in chambers is not all attempts to evade authorities are the same stripe. So it contrasted escape from prison with failure to report. Failure to report, you can do at home on your couch, you can just fail to show up. And the Court said, look, that's passive, it's a crime of inaction. This is not that. It's not sitting at home on the couch. This is quintessentially a crime of action. There's a difference. The opposite of passive is active. It's not aggressive. Well, but ---- This is active, he's running away, but it's the aggression. But it's very ---- it's hard to see what the difference would be between this and escape from custody, and this Court clearly indicated in chambers that escape from custody was different from failure to report under the statute in front of it. And I think this is as dangerous, maybe even more dangerous, than escape from custody. If the Court were going to say that all running away could not be aggressive within the meaning of that word for begay purposes, so too escape from a maximum security Federal prison, which in some sense is just running away. But it is extremely aggressive and it's extremely risky to others. Mr. Wald, do you think that speeding or drag racing qualifies under your understanding of the test? Justice Kagan, that's a difficult question. I don't know that I've seen any attempt to fit that offense in under the ACCA. I think that drag racing, where you're talking about speeds of 150, 160, 170 miles an hour, might qualify, but I haven't seen any cases like that. Scalia, I think then we'd have a serious question about the first part of the analysis and the risk test. I mean, 10, 15 miles over, I mean, speeding as a generic offense is likely to encomp ---- I mean, it encompasses categorically all speeding offenses, many of which are not that ---- not likely to pose a serious risk to others. So I ---- we'd have to look at the data. What we do have here is data that says this offense is four times as risky as the enumerated offense of arson. So I ---- speeding would be a difficult case so far as I know we ---- Roberts, government's never tried to make felonies. Not as far as I know, not the basic offense. Now, whether in a begay-type sense you might have some recidivism enhancement under State law that would get you there, I don't know. But I ---- again, I haven't seen any case that involved that. Breyer, when you replied to Justice Scalia, I thought that he'd said that we were dealing with a statute, and you seem to agree, that said it is a crime to flee a policeman after being ordered to stop. But I thought we were dealing with a statute that says it is a crime to flee a policeman after being ordered to stop in a vehicle. That's right. That's right. That's the offense here. It's the vehicular flight offense. And one ---- you know, I will take one issue with what my friend on the other side has said, which is A and B are not tiered. They are not greater and lesser offenses under State law. Kagan, Mr. Wall, suppose they were. I understand your point that they're not, and you might be right about that. But let's suppose that they were. Let's suppose you had a three-tier setup. One was simple flight. One was flight that causes risk of injury. One that is flight that causes injury. And let's even say that the simple flight ---- now, let's call them all felonies, but different classes of felonies. What would happen in that case? Would you still be here saying that the simple flight felony is a violent crime? Yes. It's a tougher case, but we would be here saying that, because when you're looking at an offense categorically, for instance, arson, you've got to look at all fires, all intentionally set fires, the ones that don't hurt anybody, the ones that do, and the ones that kill people. Even though the fires that kill people will be prosecutable in most jurisdictions as a greater offense, like felony murder. And so when you're looking at it categorically, you've got to look at all of the conduct in that category, even conduct that may be prosecutable under some greater offense. I think, you know, the other side sort of relies on this assumption that all conduct which might satisfy the greater will necessarily be prosecuted under the greater. And as a legal matter, it's included within the lesser, and as a factual matter, it's just not true that it always gets prosecuted under that greater offense. So it would be a tougher case. It would make our case more difficult. But I think legally and factually, the government's answer would be the same. Kagan. I asked my clerk to just do a survey of the States, and he came up with, and I'm sure that this is rough, but that 46 of the States have these tiered systems. Now, there may be some questions as to some of them, like you've raised some questions  as to different kinds of conduct, one which is the violent kind and the other which is the not-violent crime. Well, my State law research is a little different from your clerk's. I've got 37 States in D.C., but the point is that under the nested statutes, the aggravator isn't always like this one, risk. Sometimes it's, as in Indiana, injury or death. And where you're talking about actual injury or death, those aggravators far outstrip the level of potential risk that ACCA requires. So I don't think in those States, Petitioner, we don't have an argument that those aggravators would affect at all the analysis of the basic offense. There are a handful of States that, unlike Indiana, have as an aggravator risk, though even some of those States treat the basic offense as a felony, which is, I think, a judgment by the State that even in the basic case, this is risky conduct deserving of severe punishment under State law. So, you know, there are nested statutes. Scalia, I mean, again, I think it is significant that in 1998, the General Assembly broke this out as a separate subsection and said, we're not even going to require prosecutors to prove risk. I think that represents a judgment by the State that the conduct is risky on a typical basis. We just want the State to prove you that it's not. Scalia, or that even if it isn't risky, you should not thumb your nose at the police when they tell you to stop.   The reason you shouldn't, Justice Scalia, is because that's the kind of purposeful, violent, and aggressive conduct the State wants to deter by treating as a felony. But, I mean, whether one looks at the risk prong and the data and the cases in Indiana or elsewhere, or whether one looks at the character of the conduct, this offense is just different in both degree and kind from the offenses that this Court has said fall outside of ACCA's residual clause. It's much more like escape from custody. It's much more like the enumerated offenses. Indeed, the risk of confrontation is certain. I mean, it's important, I think, that these flights are not calm affairs. They're dangerous events. The average speed that the offender is traveling nationwide is 25 miles an hour over the speed limit. This is someone who on average is young, unlicensed, influenced by a couple of others. Roberts, I don't know where or I don't remember where this is from. I thought there was a development of best police practices that you don't just chase people, you know, if they're going 30 miles an hour over the speed limit through a school zone, that doesn't mean the police officer should do that. You know, you call ahead, they put these strips on the road, whatever. Chief Justice, that's right. I think police agencies have been struggling with this question, which is why there's a lot of data on police pursuits, frankly, especially in the last 10 or 15 years. I think some of them are becoming more restrictive. And so the data picks up pursuits. It doesn't pick up all flights. And I think if there were sound evidence that when people were not pursued, they were actually driving at low speeds and safely, that would affect the data, though not so much that it would move it outside of similarity to the enumerated offenses. But I think the data is pretty good in indicating that the typical flight is really a serious potential risk of physical injury to others, a risk that materializes more often than with other crimes that Congress clearly intended to fall within the ACCA. Alito, if a person is convicted of vehicular flight that causes death, is that aggressive conduct? Yes, the government would say it is, Justice Alito. And is the conduct there any different from the conduct when death doesn't result? No, Justice Alito. The government's answer is that categorically the behavior is aggressive, and that in some cases it will result in injury or death, and in some it will not. But in all cases it carries that potential. Doesn't whether it's aggressive or not depend upon how it happened? I mean, it could be the flight puts in place the potential for violence. I agree with that. But if somebody just, you know, jumps out between two cars while the fellow is fleeing, how has his conduct changed to aggressive? It's not like he's aiming for the guy. I mean, it's putting it in a dangerous situation. It's purposeful. Again, I'll give you violent in the sense that it has that potential. But he didn't want to hit the person. It's not aggression against the person. There's no question that on a case-by-case basis you could flee in a way that was not very risky, that was not very violent or not very aggressive. And if this Court went on a case-by-case basis, then we'd look at the conduct here, and the government would still win, because this is the typical case. Scalia But he's saying even when it's risky, it's not aggressive. You can be risky and not aggressive, can't you? Yes, on a case-by-case basis. But categorically, which is what this Court looks at, the conduct encompassed by the elements in the ordinary case, in the ordinary case the character of the conduct is aggressive. Roberts Who is he aggressing against? When someone sees the police and says, I'm getting out of here, and drives down the highway, say, at 80 miles an hour, you know, 25 miles above the speed limit, who is he? I'm sure it's not the right verb, but who is he aggressing against? Well, I don't know that he's aggressing against anyone in the same way that if I recklessly fire a gun into a large crowd of people. You know, I haven't aggressed against anyone in particular. He's aggressed against anyone who strays into his field of flight and who could be injured by what is typically a high-speed flight in pursuit. So I don't – there is no specific target, but that will be true of many of the crimes that are violent felonies, that the aggressive nature of the conduct is directly related to the crime. And if there is a specific target, there is no target. What this guy hopes is that nobody gets in his way. Well, so too with the burglar, who hopes that no one will come home. Maybe even the arsonist, who hopes no one is in the house. Or the extortionist, who hopes someone will pay and won't abuse violence. They are mentioned. They are mentioned. And you are trying to get this under the residual clause. That's right, Justice Scalia. A residual clause, as you yourself have recognized, is extremely broadly worded. It does – it abstracts out as the quality of the enumerated offenses that they create a serious potential risk of physical injury to others. And I can't find any metric along which flight doesn't do that, whether one looks through the cases, media reports, the statistical data, whatever one – Indiana nationally – whatever standard or metric one uses, this is an extremely risky offense to others. And, you know, so it's very difficult to figure out what test, what target, what interpretation of that language would exclude this from the HACA subpoena. Breyer, I suppose you have one of 36 States, which treat this – treat the general offense as a misdemeanor and then make it a felony if you put somebody at risk. Just reading that statute, you'd think those 36 States, when they have the general offense, do something where the guy acted pretty trivially. And where it's a felony, he actually put somebody at risk, sped off. Wouldn't that be your normal instinct in just guessing from the language? How are we supposed to treat those, where there's a misdemeanor? In your opinion, it's just a misdemeanor, we also treat it the same way, say it's a violent felony? The States treat it differently. Some, as Indiana does. All right. And that's actually the question. Are we supposed to, in this Federal statute, try to track whether it's a misdemeanor, what the language is? We're going to have a nightmare of a Federal law for States to – for judges to figure this out. I mean, every little variation in thousands and thousands of possible variations could make a difference as to whether it's violent or not, depending on data which no one will have. Justice Breyer, I don't think so. If the Court were to affirm here, what that would mean is that the offense of flight is a violent felony insofar as you have a predicate conviction under a State statute where it's been punishable by up to a year and so it could qualify for ACCA coverage. Now, some State convictions will have been treated as misdemeanors and won't be eligible for ACCA, but to the extent a State treats it as a felony, it's risky enough to satisfy the residual clause. Now, if the Court treats A and B as what they are not, which is greater or lesser, then, yes, I think there will be problems with various State statutes, as Justice Breyer said, that may have to clear it up down the road, but if it treats this basic offense as what it is, not a greater or lesser, but alternative means of proving a single offense that is risky, that would, I think, take care of all flight cases going forward. Kagan. Well, on this question of whether this statute is greater or lesser, it's greater or lesser if you just understand B1A as confined to vehicular flight. In other words, if one looks only at vehicular flight, then B1A and B1B are indeed greater or lesser offenses. Yes, Justice Kagan, if you're looking only at the vehicle prong of B. But the test in Schmock is whether it's impossible to commit the greater without committing the lesser. It's not impossible to commit B because it does have the two other prongs. And I think that's the case.  If I flee in a vehicle, I could be prosecuted under both and receive sentences under both? No, I don't think so, because I think the – there is no evidence, no case in Indiana that I'm aware of, there's no evidence that the General Assembly intended these to be multiple punishments for a single incident. They're alternative means of proving a single offense. The State has always treated them that way, so far as I can tell. I have not seen – I've seen prosecutions since 1998 that were all under A. I haven't seen anything that went under A and B and tried to get multiple punishments. And I think that would be a serious problem. Sotomayor, I'm a little confused by what you said and what point you're making. You don't think that B is a lesser included of A? No, that A is a lesser included of B? Your Honor, the government does not think that A is a lesser included of B. You can't commit B without committing A first. B has just one additional element, but all of the elements of A are part of the elements of B. So how can it not be a lesser included? Well, the element of B that's different, Justice Sotomayor, is the while committing any offense described in subsection A. So you can be resisting an officer or you can be obstructing the service of process and you can endanger someone in various ways, including with a vehicle, and you will have violated B and you can be prosecuted for that, and there are cases in Indiana like that, and you have not flee – you have not been fleeing in a vehicle from an officer at any point. So you haven't violated A. So the existence of the other prong there, that's what I was trying to get into, Justice Kagan, means that this is not a greater or lesser under Schmuck. But as a vehicular flight only, it would be greater or lesser. If you divided up the prongs under Schmuck, but I think the Schmuck – what follows logically from that test is that you look at the entire offense and ask whether it's possible to commit it without committing the lesser, and that test is not satisfied here. I don't think you carve it up prong by prong. This is greater or lesser for purposes of what, double jeopardy? No, it's greater or lesser for purposes of Petitioner's argument that you should assume that every risky flight gets prosecuted under B, and hence, A is a non-risky offense. And that argument fails for multiple reasons, one of which I was trying to spin out. It's not even true that this is greater or lesser. Scalia, I just don't follow that argument. I mean, it seems to me that, yes, you could – you could run afoul of B by committing an offense under subsection little a in some other ways, but if you run afoul of B by committing the offense of flight from a law enforcement officer, it seems to me that that automatically includes A. Well, except that there are two alternative means of proving the same offense under State law. They have the same State law penalties. So the prosecutors can go under A or they can go under B. And as far as I can tell, for the last, say, 13 years, they've been going under – they've been going under A. So it's not – just, Scalia, it's not a – there are aggravators in this statute for injury or death. They're the ones that are in 2 and 3, the Class C and Class B felonies. But this is not a greater or lesser. It's their alternative means. I think only if you got – set that aside would you get to the sort of schmuck analysis that I was going through with Justice Kagan. And I think one of the important things to recognize about this offense is that, you know, 50 percent of these offenders are ultimately charged with a violation that's unrelated to their flight, a serious felony unrelated to their flight. And the reason I think that's important is because what you will look – the reason that they're traveling at such high speeds, the reason they're evading officers, the reason the typical case is not someone just going a couple blocks and stopping is because they've got drugs in the car or guns, they have parole violations or outstanding warrants. It is the background against which I think you have to assess the character of the conduct here. And whether you're looking at it under risk or under the character of the conduct, the government submits that it easily satisfies the residual clause. Are there no further questions? Thank you. Roberts. Thank you, Mr. Wall. Mr. Marsh, you have 4 minutes remaining. Marsh. Thank you, Mr. Chief Justice. I would suggest that it's helpful to start to look at the in-kind part of the Begay test on a more general level than we've been discussing. Could you succinctly tell me how this is any less purposeful, aggressive, or violent than escape from custody? What's your best answer to why this is just not identical to escape, which is a fleeing from situation, just as this is? Justice Sotomayor, the basic distinction is that the person who's charged with escape, assuming that escape means escape from a secure institution or from a person, is that the person is in custody. And it takes, in the ordinary case, aggression and violence to get out of the custody of that person. The person who is fleeing is trying to avoid being taken. Well, here an officer has told you to stop. They're trying to affect custody. And I don't know what the aggression or violence is, other than, you know, breaking a window, doing something, doesn't require the escape, that you actually injure someone to get out. It's just that you run away. I think the phrase that you just used is the distinction that I was referring to. The person who's fleeing is trying to avoid being in custody. They're acting in a — instead of going toward the officer and resisting, they're going away from the officer. The person who's in custody has to use some kind of force. And in Johnson, of course, the — this Court referred to violent as — Well, that's not true. There are a lot of — you can — there are prison escapes all the time where it's done through subterfuge. That's true, Justice Alito. But as the Court held in James, finding an example of a case that would not be violent does not solve the ordinary case. The ordinary case, I would suggest, requires something more than that. Well, it's, for me anyway, an important question, Alito. I'm not sure the ordinary case does. I assume the ordinary prison escape is, I don't know, over the wall, under the tunnel, or, you know, while the guard's looking a different way, or some distraction. I don't know that it's typical that when the guard is there, you say, now's my chance. The typical case doesn't involve aggression. Of course, the ordinary case, or the typical case, Mr. Chief Justice, is that the Court needs to look at the conduct encompassed by the elements of the statute. And so we would have to look at exactly what the statute requires. The circuit courts have been very divided on escape. In my circuit, the Seventh Circuit, the Federal Statute 751 has been held not to be — which is the general escape statute — not to be a violent felony. But again, the Court talks about the ordinary case in the James case for the purpose of disabusing the idea that one can't get out from under the violent felony designated situation just by coming up with a hypothetical case or an example where it can be done without violence. Here, I would suggest that counsel has just created for the Court some kind of a hypothetical case to define the typical or ordinary case. This Court has never done that. And this Court said in James that it's important to stick to the conduct encompassed by the elements of the offense, because if we start factoring in other kinds of conduct as several of the things which have been mentioned by counsel for the government, that begins to raise apprendi problems, which is another whole issue. But what the Court said in James, and I would acknowledge is the law, that so long as the determination as to whether there's a serious potential risk of physical injury is made by focusing on the conduct encompassed by the elements of the offense, then there's not an apprendi problem. Thank you, counsel.  Thank you.